IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MICHAEL H. HOLLAND, et al.,

        Plaintiffs,

v.                                       CIVIL ACTION NO.  2:10-cv-01412

MATE CREEK TRUCKING INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' Motion for Summary Judgment [Docket 35]. For the reasons discussed below, this Motion is **GRANTED**.

**I.**    **Background**

    A.    *Facts*

The plaintiffs, Michael H. Holland, Carlo Tarley, Daniel L. Fassio, and Morris D. Feibusch are Trustees of the plaintiff United Mine Workers of America ("UMWA") 1992 Benefit Plan ("1992 Plan" or "Plan").  They filed suit to recover amounts due under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act") and a settlement agreement.

The 1992 Plan provides health care benefits to certain eligible coal industry retirees and their eligible dependents.  It is funded primarily by premiums paid by the "last signatory operator"—the last employer for whom the retirees worked under the UMWA contract.  26 U.S.C. §§ 9701(c)(1), (3), (4) and 9712(d)(6).  Under the Coal Act, a last signatory operator is

responsible for paying monthly premiums for each eligible beneficiary of that operator. 26 U.S.C. § 9712(d)(3). In addition, "any related person to any such operator, shall be jointly and severally liable with such operator for any amount required to be paid by such operator."[1] 26 U.S.C. § 9712(d)(4). According to the plaintiffs, the defendants—Mate Creek Trucking, Inc., Matecreek Security, Inc., and Summit Equipment & Leasing, Inc.—are related persons to Apex Minerals, Inc. ("Apex").

Apex, a West Virginia corporation, operated coal mines. It was the last signatory operator for two retirees and three dependents enrolled in the 1992 Plan. Three of these individuals remain in the Plan. In 1999, the Plan filed suit against a number of entities, including Apex and the defendants in the instant dispute, in the Southern District of West Virginia seeking premiums owed under the Coal Act. *Holland, et al. v. Apex Minerals, Inc., et al.*, 2:99-cv-403. The parties entered into a settlement and release agreement ("Apex Settlement" or "Agreement"), under which the defendants in that suit agreed to pay the premiums and interest owed to the 1992 Plan and to timely pay premiums as they came due. In exchange, the Plan dismissed the suit with prejudice and released any claims for liquidated damages and attorneys' fees. However, the Apex Settlement stipulates that "[t]he waiver by the 1992 Plan [of liquidated damages and attorneys' fees] shall be voidable if Defendants fail to comply with their promises set forth in this Agreement."[2] (Pls.' Mot. Summ. J. [Docket 35], at Ex. A-1, ¶ 7.) The Agreement also states that, "Defendants . . . Matecreek Security, Incorporation, . . . Mate Creek

---

[1] A related person is defined as: "(i) a member of the controlled group of corporations . . . which includes such signatory operator; (ii) a trade or business which is under common control . . . with such signatory operator; or (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner. A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii)." 26 U.S.C. § 9701(c)(2).

[2] This paragraph of the Agreement seems to contemplate that the plaintiffs can obtain statutory damages after they contractually released the claims that conferred those damages. I interpret this paragraph instead to establish that damages for breach of the Agreement shall include an amount equal to the liquidated damages and attorneys' fees that had been waived under the Apex Settlement.

Trucking, Inc., . . . [and] Summit Equipment & Leasing, Inc. . . . are related persons to Apex Minerals, Inc. under the Coal Act, and as such are jointly and severally liable for the Coal Act obligations of Apex Minerals, Inc. at issue in this case." (*Id.* at ¶ 4.) The defendants do not contest their designation as "related persons" in this suit. (Defs.' Resp. Pls.' Mot. Summ. J. [Docket 42], at 2.)

According to the complaint, Apex and its related persons made monthly payments to the 1992 Plan through November 8, 2001. Since then, the plaintiffs allege that no payments have been made. In January 2002, Apex filed a no asset Chapter 7 bankruptcy petition, which closed without any distributions made to creditors. The plaintiffs filed their complaint on December 27, 2010. On September 8, 2011, the plaintiffs filed a Motion for Summary Judgment, which is now ripe.

## II. Motion for Summary Judgment

### A. *Standard of Review*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*,

477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

  B. *Analysis*

  The plaintiffs first allege that the defendants, who are related persons to Apex, are liable for their failure to pay monthly premiums as required by the Coal Act since November 8, 2001. 26 U.S.C. §§ 9712(d)(3), 9712(d)(4). The plaintiffs assert that because the court should enter judgment in their favor, it must award them unpaid contributions, along with interest, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2).

  Second, the plaintiffs bring a breach of contract claim and allege that because the defendants stopped paying monthly premiums as they came due, the defendants failed to comply with the terms of the Apex Settlement. As a result of this breach, the plaintiffs argue that they are entitled to an amount equal to the interest, liquidated damages, and attorneys' fees and costs that it claims to have released as part of the Agreement.

  In their response, the defendants do not contest that Apex was the last signatory operator for the two retirees covered by the Coal Act. They do not dispute that they are "related persons" to Apex. In addition, the defendants do not provide any evidence rebutting the alleged failure to

pay monthly premiums. Finally, they do not address the applicability of 29 U.S.C. § 1132(g)(2) to award interest, liquidated damages, and attorneys' fees and costs. Instead, the defendants appear to contend that the statute as written is "flawed" and unwise from a policy perspective because it permits recovery against persons who "were never signatories to any National Bituminous Coal Wage Agreement" or "engaged in active mining of coal" when the last signatory operator is no longer in business. (Defs.' Resp. Pls.' Mot. Summ. J., at 4.) Such a contention should be raised with the legislature rather than the court. The defendants also claim that they filed for dissolution as West Virginia corporate entities on August 25, 2011. Consequently, "such claims as this civil action should be treated as pending and become part of the orderly dissolution of the company as opposed to adjudication by summary judgment." (*Id.* at 6.)

I first examine the defendants' liability under the Coal Act for their failure to pay monthly premiums since November 8, 2001. The Coal Act provides that "[a]ny last signatory operator . . . shall pay the monthly per beneficiary premium . . . for each eligible beneficiary . . . attributable to that operator." 26 U.S.C. § 9712(d)(3). In contrast, liability under the two other plans, the Combined Benefit Fund and individual employer plans ("IEPs"), is limited to signatory operators who "remain[] in business."[3] 26 U.S.C. §§ 9706(a), 9711(a). As the Second Circuit explained in *In re Olga Coal Co.*,

> The [Coal] Act provides that liability *to the Combined Fund or to IEPs* is limited to operators still "in business." *See* §§ 9706(a), 9711(a). Regarding the 1992 Plan, however, Congress extended liability to "1988 last signatory operators," § 9712(d)(1), and other "last signatory operators," § 9712(d)(3), with no language limiting liability to operators still "in business." This unambiguous textual distinction strongly suggests that Congress intended to exempt signatory operators no longer in business from the requirements of §§ 9706 and 9711, but not from § 9712.

---

[3] A person is "considered to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry." 26 U.S.C. § 9701(c) (7).

5

159 F.3d 62, 66 (2d Cir. 1998) (emphasis in the original). "Related persons" are "jointly and severally liable with such operator for any amount required to be paid by such operator." 26 U.S.C. § 9712(d)(4). The statute does not limit liability to related persons that are in business.[4] There is, however, a different limit on the liability of a corporation to the Plan. Judge Faber, in *Holland v. Kitchekan Fuel Corp.*, asked "whether a dissolved corporation remains liable for contributions to the 1992 Plan." 137 F. Supp. 2d 681, 684 (S.D. W. Va. 2001). The court drew a distinction between dissolved corporations that are "dead" and those that are "dead and buried." *Id.* at 686. A corporation is merely "dead" when it has dissolved but has not completed distributing its assets. *Id.* Such a corporation remains liable to the 1992 Plan. If a corporation has distributed its assets completely, it is "dead and buried," and not amenable to suit. *Id.* Judge Faber also distinguished *Kitchekan Fuel Corp.* from *In re Olga Co.*, which held that companies still in existence but no longer in business were obligated to contribute to the 1992 Plan. *Id.* at 687.

In the instant dispute, Apex is "dead and buried." Apex filed a no asset Chapter 7 bankruptcy petition in January 2002. The petition was closed with no distributions made to creditors. Therefore, under *Kitchekan Fuel Corp.*, Apex is not amenable to suit and is not a defendant in this case. The defendants, however, as related persons remain jointly and severally liable for the amounts that Apex is required to pay. 26 U.S.C. § 9712(d)(4). Moreover, the defendants cannot avoid liability under the Coal Act by relying on the *Kitchekan Fuel Corp.* decision because they have not provided evidence showing that they are not only dissolved, but also "dead and buried." In West Virginia, "A corporation is dissolved upon the receipt by the corporation of a certificate of dissolution from the secretary of state." W. VA. CODE § 31D-14-

---

[4] Even if only related persons still in business could be held liable to the 1992 Plan, the defendants have not shown that they are not in business as defined by the statute. *See* 26 U.S.C. § 9701(c)(7).

1403(b). Although Matecreek Security, Inc. and Summit Equipment & Leasing, Inc. have filed for dissolution in West Virginia, there is no evidence that either has received a certificate of dissolution from the secretary of state. Mate Creek Trucking is a Kentucky corporation and there is no evidence that it has dissolved either, even though it filed in West Virginia an "Application for Certificate of Withdrawal from Certificate of Authority." (Defs.' Resp. Pls.' Mot. Summ. J., at Ex. 1.) Even if the defendants had dissolved, they would have to show that they have completely distributed their assets to shield themselves from liability to the 1992 Plan. Accordingly, I **FIND** that the plaintiffs are entitled to judgment as a matter of law for the defendants' violations of the Coal Act, and the defendants are liable to the plaintiffs for unpaid contributions, interest, liquidated damages, and attorneys' fees and costs.

Next, the plaintiffs argue that the defendants breached the Agreement, and the court should award the plaintiffs an amount equal to interest, liquidated damages, and attorneys' fees that they waived under the Apex Settlement. The Agreement states that the defendants agreed to pay a sum of money, "representing all premiums and interest owed . . . through March 31, 2000." (Pls.' Mot. Summ. J., at Ex. A-1, ¶ 1.) In addition, the 1992 Plan agreed "to release its claims for and to waive the liquidated damages and attorneys' fees to which it might otherwise by entitled." (*Id.* at ¶ 6.) But the Agreement states that if the defendants fail to comply with its terms, the plaintiffs can seek an amount equal to the liquidated damages and attorneys' fees that it waived. The defendants do not contest the validity and enforceability of the Apex Settlement. Additionally, they do not dispute that they stopped paying premiums as they came due—a promise set forth in the Agreement. Accordingly, the defendants' failure to comply with the Apex Settlement entitles the plaintiffs to an amount equal to the liquidated damages and attorneys' fees that were waived in the Apex Settlement. The Agreement did not, however, state

that the plaintiffs waived interest. And the amount paid was said to "represent[] all premiums *and interest* owed." (*Id.* at ¶ 1.) (emphasis added). As a result, I **FIND** that the plaintiffs are entitled to judgment as a matter of law and the defendants are liable to the plaintiffs for an amount equal to the liquidated damages and attorneys' fees that had been waived under the Agreement. Accordingly, I **GRANT** the plaintiffs' Motion for Summary Judgment as to all the claims.

    C.    *Damages*

Under 29 U.S.C. § 1132(g)(2), the court "shall award the plan": (a) unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the plan;[5] (d) reasonable attorneys' fees and costs; and (e) such other legal or equitable relief as the court deems appropriate. The plaintiffs have filed a declaration by Dale R. Stover, the Funds' Director of Finance and General Services. (Pls.' Mot. Summ. J., at Ex. A.) Stover stated that the defendants are delinquent in their obligations in the principal amount of $268,619.58 through August 15, 2011. Interest through August 15, 2011, on these delinquent obligations equals $67,109.61. In addition, monthly premiums continue to accrue on the fifteenth of each month at $2,054.76 per month, beginning with the premium due on September 15, 2011. Interest accrues after August 16, 2011, at a rate of $29.44 per day. The declaration further states that the plaintiffs are entitled to an amount equal to interest on unpaid contributions—$67,109.61—because liquidated damages were not provided for under the plan. The defendants do not contest any of these calculations.

---

[5] Liquidated damages are "not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)." 29 U.S.C. § 1132(g)(2)(C)(ii).

For the breach of contract claim, the plaintiffs are entitled an amount equal to the liquidated damages and attorneys' fees that had been waived under the Agreement. Stover's affidavit states that liquidated damages from the Apex Settlement equal $7,528.92. The defendants do not dispute this amount.

The court **FINDS** that the amount of damages is undisputed and awards the plaintiffs: (1) $268,619.58 in unpaid contributions up to August 15, 2011; (2) $8,219.04 in unpaid contributions for the months of September through December 2011 at a rate of $2,054.76 per month; (3) $67,109.61 in interest on the unpaid contributions up to August 15, 2011; (4) $4,357.12 in interest on unpaid contributions from August 16, 2011, to January 10, 2012; (5) $71,466.73 representing the amount equal to the greater of interest or liquidated damages; and (5) $7,528.92 representing the amount equal to liquidated damages that had been waived by the Apex Settlement. In total, the plaintiffs are awarded $427,301.00. By statute, the Court is also required to award the plaintiffs reasonable attorneys' fees and costs for the plaintiffs' failure to comply with the Coal Act. Furthermore, the defendants are liable to the plaintiffs for an amount equal to the attorneys' fees from the 1999 suit because the defendants breached the Apex Settlement. The Trustees are **ORDERED** to submit an affidavit setting forth their costs and attorneys' fees within thirty days of the entry of the accompanying Judgment Order.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  January 10, 2012

Joseph R. Goodwin, Chief Judge

9